UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK L. DUKE, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-1137 |
| | § | |
| WALKER & PATTERSON, P.C., | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The appellant, Mark Duke ("Duke"), is the owner and managing member of the bankruptcy debtor, Duke Investments, Ltd. ("DIL").[1] Duke seeks to vacate an order of the bankruptcy court that, he argues, impermissibly ordered him to pay the attorney's fees of the appellee, Walker & Patterson ("WP"), which served as special litigation counsel during DIL's bankruptcy. The Court **AFFIRMS** the bankruptcy court's judgment.[2]

### I.   BACKGROUND

Duke formed DIL to acquire and develop oil and gas properties. About 15 years after founding DIL, Duke began looking for a new banker for DIL and was referred to Amegy Bank, N.A. ("Amegy"). Amegy entered into a loan agreement with Duke, who

---

[1] To be precise, the pleadings filed by DIL and Duke indicate that "DIL is owned 90% by Duke and 10% by Duke family trusts." *See* Southern District of Texas bankruptcy case number 10-03577 at Dkt. 1, p. 1. The record does not reflect that any person or entity other than Duke holds an interest in DIL that is material to the discussion of this appeal.

[2] The related bankruptcy cases are Southern District of Texas bankruptcy case numbers 10-36556 (lead bankruptcy case) and 10-03577 (related adversary proceeding). Any docket citations that do not include the case number are from this docket, Southern District of Texas civil action number 4:18-CV-1137.

signed for DIL as the borrower and for himself individually as guarantor. Simultaneously with the loan agreement, Duke signed a derivative trading agreement with Amegy.

The relationship soured, and Amegy eventually sued DIL and Duke in Texas state court and posted some of DIL's properties for foreclosure. DIL and Duke filed a separate lawsuit, also in Texas state court, to enjoin the foreclosure; and DIL filed a Chapter 11 bankruptcy petition. *See* Southern District of Texas bankruptcy case number 10-36556. Duke and DIL then sued Amegy in an adversary proceeding related to DIL's bankruptcy, alleging, among other things, that Amegy had breached both the loan agreement and the derivative trading agreement, causing damages to Duke and DIL and excusing Duke and DIL from performing under the contracts. *See* Southern District of Texas bankruptcy case number 10-03577 at Dkt. 1. Amegy countersued both Duke and DIL, alleging that Amegy had not breached either agreement and was therefore owed balances on both. *See* Southern District of Texas bankruptcy case number 10-03577 at Dkt. 21. The balances claimed by Amegy were substantial: Amegy filed a proof of claim in DIL's bankruptcy asserting a secured claim in the amount of $5,259,958.43. *See* Southern District of Texas bankruptcy case number 10-03577 at Dkt. 55-1.

DIL filed an application with the bankruptcy court to retain WP as special counsel under a contingent-fee arrangement to prosecute the adversary proceeding brought by Duke and DIL against Amegy (Dkt. 2 at p. 26). The proposed contingent-fee agreement was submitted to the bankruptcy court for approval and was signed by Duke individually; by Duke as managing member of DIL; and by WP (Dkt. 2 at pp. 40–41). The proposed agreement included the following paragraph:

> To the extent necessary, this Agreement will be submitted to the Bankruptcy Court having jurisdiction over the Client's bankruptcy proceedings for approval. If the Bankruptcy Court does not approve this Agreement then Attorney shall have the right to terminate this Agreement. Any dispute arising under or relating to this Agreement, or the performance of any party hereto, shall be submitted to the Bankruptcy Court for resolution.[3]
>
> Dkt. 2 at pp. 40–41.

The bankruptcy court modified the proposed contingent-fee agreement to include the condition that, if the only recovery by Duke and DIL in their battle against Amegy was a reduction in the amount they owed to Amegy, Duke alone—and explicitly not DIL—would pay WP's contingent fee and expenses:

> In the event the final result of asserting all claims, counterclaims and defenses by [DIL] against Amegy in the [adversary proceeding], whether by settlement or a final judgment, is a reduction in the amount of [the secured claim asserted in Amegy's proof of claim] (whether by defense or setoff of affirmative claims or counterclaims), and not in any amount to be paid by Amegy to [DIL], then the contingency fee calculated on such reduction under the Contingency Fee Agreement shall be payable to WP solely by [Duke] and there shall be no claim against [DIL] for such contingency fee. Further, in such event, any expenses advanced by WP under the Contingency Fee Agreement for which it is entitled to recovery shall be payable solely by [Duke] and there shall be no claim against [DIL] for such amount.
>
> Dkt. 2 at p. 50.

In other words, in the event that WP could claim a victory (and thus entitlement to a contingent fee) without actually bringing cash into the bankruptcy estate, the bankruptcy estate's assets and its other creditors would nevertheless be protected because the bankruptcy court had mandated a guarantee of WP's contingent fee from Duke, who as the owner and managing member of DIL had guaranteed DIL's debt to Amegy and

---

[3] The proposed agreement specified that "Client" referred to DIL and that "Attorney" referred to WP (Dkt. 2 at p. 37).

was a party aligned with DIL in the adversary proceeding. There was no objection to the bankruptcy court's modification of the contingent-fee agreement, and the bankruptcy court approved the agreement as modified (Dkt. 2 at pp. 49–52). The modified agreement became a formal retention order of the bankruptcy court and was entered on the bankruptcy court's dockets in both DIL's bankruptcy and the adversary proceeding, again without objection (Dkt. 2 at pp. 49–52). *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 178 and Southern District of Texas bankruptcy case number 10-03577 at Dkt. 90.

The adversary proceeding in which WP represented Duke and DIL settled. *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 206. The settlement required Amegy to amend its proof of claim to assert a secured claim in the amount of $4,000,000.00—a reduction in the secured claim of $1,259,958.43. *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 199, pp. 3–4. Since the recovery to Duke and DIL took the form of a reduction in Amegy's secured claim, Duke—and Duke alone—owed WP a contingent fee of $503,983.37; and WP filed an application for allowance of compensation in that amount (Dkt. 2 at pp. 53–63). To make sure that it was absolutely clear who had to pay the fee, Amegy filed a "limited objection" to WP's application in which Amegy expressed no reservations about the amount of fees claimed by WP but "d[id] object to [WP's] fees and expenses being paid from the [bankruptcy] estate" because, "pursuant to the terms of the [bankruptcy court's retention order] only Mark Duke is liable for payment of the fee award and the estate is not be [sic] liable for payment." *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 230,

p. 2. There was no response to Amegy's objection, which was a correct reading of the retention order. The bankruptcy court signed a fee award order awarding a $503,983.37 "contingency fee per order" and $3,405.50 in expenses to WP; to address Amegy's concerns, the bankruptcy judge included a statement in the fee order that "[t]he Debtor-in-possession shall not be liable for the awarded compensation" (Dkt. 2 at p. 75). There was no objection to the fee order, and Duke did not appeal it.

DIL's bankruptcy continued for five more years. *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 438. During that time, WP unsuccessfully attempted to get Duke to pay the contingent fee by filing a motion for a writ of garnishment and an adversary complaint alleging fraudulent transfer of assets. *See* Southern District of Texas bankruptcy case number 10-36556 at Dkt. 387 and Dkt. 403. After DIL's bankruptcy closed, WP filed a motion under Federal Rule of Civil Procedure 60(a) asking the bankruptcy court to reopen the bankruptcy and correct its order awarding the contingent fee and expenses to WP (Dkt. 2 at pp. 76–79). Specifically, WP asked the bankruptcy court to "correct the Fee Order . . . to include the direct liability of Mr. Duke for the fees and expenses awarded" (Dkt. 2 at p. 78). Duke opposed the motion, arguing that the requested correction would constitute an impermissible substantive change to the bankruptcy court's original fee order (Dkt. 2 at p. 87). In Duke's view, the bankruptcy court's original fee order only provided "that DIL was not liable for [WP's] fees[.] The [bankruptcy court] was never requested to enter . . . an order against Duke, individually" (Dkt. 2 at p. 87).

The bankruptcy judge understandably was quite unhappy with Duke's refusal to pay WP's fee. In light of the earlier proceedings, the judge was in utter disbelief that Duke could in good faith argue that the original fee order did not order him to pay WP. In response to a question from Duke's counsel about how WP's proposed correction targeted a clerical error, the bankruptcy judge said:

> Well, the clerical error—well I mean, let's be candid about this.
>
> . . .
>
> [T]here was a concern that Amegy did not want an Order that was blank as to who was responsible because they were afraid that this Order, if it were blank, would simply be read as a Fee Order that would be an administrative expense of the estate.
>
> And so, we had the discussion. Well, of course, Mr. Duke agreed to pay these fees, he's gonna pay them. What about if I just interlineate something here, as I typically do, that just says the Debtor is not responsible. I mean, that's the context.
>
> And so, should I have written it as maybe the fees should have been payable in accordance with the approved contract? Maybe that would have been a better choice of words. Quite honestly, I thought that I was dealing with honest people of integrity and good character. I obviously was not.
>
> . . .
>
> All I'm simply being asked to do is to reflect—is to complete the sentence ideally.
>
> I didn't think I had to at the time because it was very clear to me at the time that everyone understood exactly what this was supposed to be.
>
> . . .
>
> [W]hy shouldn't I simply just reflect that agreement so that there is no misconception, so that some other Court, if they ever look at it, doesn't come to an improper conclusion about what I did since apparently Mr. Duke did when I signed that Order? Why shouldn't I give great clarity to

> ensure that no one ever misunderstands exactly what was intended, exactly what the parties agreed to, and exactly what it was I ordered?
> Dkt. 2 at pp. 129–31.

The bankruptcy judge reiterated the intent of the original fee order later in the hearing:

> Well, everybody in the courtroom knew that the Debtor wasn't liable, but that Mark Duke was liable. That's what everybody knew. And I simply didn't write it in because I didn't think I needed to.
> Dkt. 2 at p. 133.

After the hearing, the bankruptcy court granted WP's Rule 60(a) request, entering an order in which it stated "that by oversight and clerical error the original fee order . . . failed to recite the Court's clear intentions, including the express intentions of the parties that Mr. Duke be personally liable for the awarded fees and expenses" (Dkt. 2 at p. 102). The order clarified "that the amounts awarded are payable to [WP] solely by [Duke], and there shall be no claim against [DIL]" (Dkt. 2 at p. 102).

Duke appealed to this Court, challenging the bankruptcy court's Constitutional authority and jurisdiction to adjudicate the matter of whether he owed attorney's fees to WP. Duke also characterizes the bankruptcy court's corrective order as a "substantive change" to the original fee order that was not permissible under Rule 60(a) (Dkt. 4 at p. 22).

## II.  BANKRUPTCY APPEALS

Federal district courts have jurisdiction to hear appeals from the "final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). A bankruptcy court's order granting a final fee application is an appealable order. *In re Delta Produce, L.P.*,

845 F.3d 609, 617–18 (5th Cir. 2016) (holding that the district court lacked jurisdiction over appeals from interim fee orders but had jurisdiction over appeal from final fee order). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

## III. RULE 60(a) AND APPEALABILITY

Although the parties' briefing goes on at length regarding a bankruptcy court's jurisdictional and Constitutional limitations, the Court emphasizes that this is an appeal from an order entered under Federal Rule of Civil Procedure 60(a), not an appeal from the bankruptcy court's original fee order. "A district court's entry of a corrected judgment under Rule 60(a) is itself an appealable order, but the scope of the appeal is limited to the court's disposition of the Rule 60(a) motion and does not bring up for review the underlying judgment." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 201 n. 55 (5th Cir. 2011) (quotation marks and brackets omitted). Thus, appealing a corrective order entered under Rule 60(a) does not extend the time to appeal the original underlying order:

> Corrections under Rule 60(a) do not affect the underlying judgment and, consistent therewith, do not affect the time for filing a notice of appeal.
>
> . . .

> The time for appeal from the underlying judgment correspondingly dates from the original rendition of judgment in the Rule 60(a) context, whereas in the Rule 60(b) situation it dates from the entry of the amended judgment.

*Danning v. Graco Enterprises, Ltd. (In re Cobb)*, 750 F.2d 477, 479 (5th Cir. 1985) (citation and quotation marks omitted).

Duke did not appeal the bankruptcy court's original order granting WP's final fee application, and the 14-day period to appeal that order has long since expired. *See* Fed. R. Bankr. P. 8002. Duke only appealed the bankruptcy court's corrective order. Accordingly, if the appealed-from order complied with Rule 60(a), this Court lacks jurisdiction to consider any of Duke's challenges to the bankruptcy court's Constitutional authority and jurisdiction to adjudicate the matter of whether he owed attorney's fees to WP. *Sommers v. Bank of America, N.A.*, 835 F.3d 509, 511–12 & n. 2 (5th Cir. 2016) ("Because the notice of appeal was [untimely], we have no jurisdiction to review that order even though the appellant's objections go to the district court's jurisdiction."); *see also Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1942–49 (2015) (holding that parties can impliedly consent to adjudication by a bankruptcy court) ("The entitlement to an Article III adjudicator is a personal right and thus ordinarily subject to waiver.") (citation and quotation marks omitted).

### IV. THE BANKRUPTCY COURT DID NOT ERR IN ENTERING THE RULE 60(a) ORDER.

The bankruptcy court's corrective order states "that by oversight and clerical error the original fee order . . . failed to recite the Court's clear intentions, including the express intentions of the parties that Mr. Duke be personally liable for the awarded fees and expenses" (Dkt. 2 at p. 102). The corrective order further clarified "that the amounts

awarded are payable to [WP] solely by [Duke], and there shall be no claim against [DIL]" (Dkt. 2 at p. 102). Duke characterizes the bankruptcy court's corrective order as a "substantive change" to the original fee order that was not permissible under Rule 60(a) (Dkt. 4 at p. 22). As previously noted, in Duke's view, the bankruptcy court's original fee order only provided "that DIL was not liable for [WP's] fees[.] The [bankruptcy court] was never requested to enter . . . an order against Duke, individually" (Dkt. 2 at p. 87). The Court disagrees with Duke and holds that the bankruptcy court acted within the scope of the authority conferred by Rule 60(a) when it entered the appealed-from corrective order.

Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Courts can exercise their Rule 60(a) authority at any time, but Rule 60(a) "can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." *Rivera*, 647 F.3d at 194 (quotation marks omitted). Generally, the cases look to three largely overlapping criteria to determine whether a mistake can be corrected under Rule 60(a), those criteria being:

> (1) the nature of the mistake, *i.e.* whether the mistake was more akin to an inadvertent omission or clerical mistake (which are correctable) or a misstep involving substantive legal reasoning (which is not);
>
> (2) the court's intent in entering the original judgment or order, which may be ascertained by reviewing relevant contemporaneous documents as well as the judge's own subsequent statements of his intent;

>     and
>
> > (3) the effect of the correction on the parties' substantial rights, *i.e.* whether the correction simply memorializes a prior adjudication (which a correction may do under Rule 60(a)) or makes a substantive modification to a prior adjudication (which a correction may not do under Rule 60(a)).
>
> *Id*. at 193–99.

A court's decision to enter a corrected judgment or order under Rule 60(a) is reviewed for an abuse of discretion, but "the determination of whether it is Rule 60(a) that authorizes the correction—as opposed to Rule 59(e) or Rule 60(b)—is a question of law that [is reviewed] de novo." *Id*. at 193.

Here, the record is clear that the bankruptcy court intended to make Duke personally liable for WP's contingent fee and expenses when it entered the original fee order. DIL's application to employ WP as special counsel included a proposed contingent-fee agreement signed by Duke, DIL, and WP in which the final paragraph announced the parties' intention to submit the contingent-fee agreement to the bankruptcy court for approval and to submit any disputes relating to the contingent-fee agreement to the bankruptcy court for resolution:

> To the extent necessary, this Agreement will be submitted to the Bankruptcy Court having jurisdiction over the Client's bankruptcy proceedings for approval. If the Bankruptcy Court does not approve this Agreement then Attorney shall have the right to terminate this Agreement. Any dispute arising under or relating to this Agreement, or the performance of any party hereto, shall be submitted to the Bankruptcy Court for resolution.

Before approving the agreement, the bankruptcy court—without objection from any party—specifically altered it to protect the bankruptcy estate by including the

condition that, if the only recovery by Duke and DIL against Amegy was a reduction in the amount they owed to Amegy, Duke alone would pay WP's contingent fee and expenses. The bankruptcy court included this condition in a formal retention order, again without objection. Moreover, when the only recovery by Duke and DIL against Amegy did in fact turn out to be a reduction in Amegy's secured claim, Amegy filed a limited objection to WP's final fee application to clarify that Duke, and not DIL's bankruptcy estate, would pay WP's contingent fee. To address Amegy's concerns, the bankruptcy judge included a statement in the fee order that "[t]he Debtor-in-possession shall not be liable for the awarded compensation." The "debtor-in-possession" language was unnecessary, but it further reinforced the only reasonable reading of the bankruptcy court's retention order and original fee order: Duke would pay WP's fee and expenses, and DIL would not pay them. In his comments at the hearing on WP's Rule 60(a) motion, the bankruptcy judge perhaps said it best:

> Well, everybody in the courtroom knew that the Debtor wasn't liable, but that Mark Duke was liable. That's what everybody knew. And I simply didn't write it in because I didn't think I needed to.

The bankruptcy judge did not exceed his authority under Rule 60(a) when he entered the appealed-from corrective order, as the bankruptcy court, in entering the corrective order, neither "resolve[d] an issue of substantive law it had not previously reached" nor "modif[ied] its resolution of any of the issues it had reached." *Rivera*, 647 F.3d at 200. "Where the record makes it clear that an issue was actually litigated and decided but was incorrectly recorded in or inadvertently omitted from the judgment, the district court can correct the judgment under Rule 60(a), even where doing so materially

changes the parties' positions and leaves one party to the judgment in a less advantageous position." *Id*. at 199. In its retention order, the bankruptcy court mandated that Duke guarantee WP's fee and expenses in the event that the only recovery by Duke and DIL in their adversary action against Amegy was a reduction in the amount they owed to Amegy—which, in the end, was exactly the recovery that Duke and DIL obtained. The retention order and the fee order required Duke to pay WP's fee and expenses; the failure of the bankruptcy court to expressly write "Duke must pay WP's fee and expenses" into the original fee order was, at most, the inadvertent omission of a determination that the record definitively shows the bankruptcy court to have already made. *See, e.g., Chavez v. Balesh*, 704 F.2d 774, 775–77 (5th Cir. 1983) (holding that a district court acted properly under Rule 60(a) in adding a liquidated damages award to a final judgment when the district court's accompanying findings of fact and conclusions of law included a finding that the plaintiff was entitled to liquidated damages).

In short, the bankruptcy court's corrective order was permissible under Rule 60(a). "The correction simply caused the [order] to accurately memorialize what the court had previously decided[,]" *Rivera*, 647 F.3d at 200—namely, that Duke would pay WP's fee and expenses. The bankruptcy court properly utilized Rule 60(a) and did not abuse its discretion. For the reasons given and under the authority cited in Section III of this opinion, because the bankruptcy court's use of Rule 60(a) was proper and there was no appeal of the original fee order, this Court lacks jurisdiction to consider Duke's various challenges to the bankruptcy court's Constitutional power and jurisdiction to enter the original fee order.

## V.    CONCLUSION

The Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED this day 15th day of October, 2019.

                                                George C. Hanks Jr.
                                                United States District Judge